UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BONNIE J. SCHMIDT,

        Plaintiff,

        v.                                               Case No. 20-C-953

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

Plaintiff Bonnie Schmidt filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff contends that the decision of the administrative law judge (ALJ) requires remand for several reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on January 28, 2014, alleging disability beginning April 15, 2013. She listed fibromyalgia, ulcerative colitis, chronic fatigue, chronic pain, dizziness, headaches, heart rhythm issues, depression, and being chronically unwell as the conditions that limited her ability to work. R. 86. After her application was denied initially and upon reconsideration, she requested a hearing before an ALJ. ALJ Patrick Toal conducted a hearing on February 9, 2017. Plaintiff, who was represented by counsel, two medical experts, and a vocational expert (VE) testified. R. 36–85.

At the hearing, Plaintiff amended her alleged onset date to March 30, 2014. She testified that she was 57 years old and lived with her siblings. R. 43, 46. Plaintiff stated that she completed high school and then, shortly after high school, completed a nine-month fashion merchandising course. R. 43. Plaintiff testified that, in a typical day, she is able to do the dishes and limited laundry but is not able to do other household chores because lifting is an issue. R. 47–48. She indicated that her dizziness interfered with her ability to drive and to shop. R. 51. Plaintiff stated that her day consists of lying down and resting for 20 to 30 minutes and lying on the couch in front of the television for eight hours. R. 53–54. She testified that she sleeps ten hours a day. R. 55. She stated that she likes to read but has difficulty focusing and concentrating. R. 58. Plaintiff testified that, in 2003, she fell on the sidewalk and fractured and dislocated all four fingers in her left hand. R. 59. As to her ulcerative colitis, Plaintiff stated that she has bloating, bleeding, mucus, urgency, loose stools, and fatigue. R. 61. She indicated that treatment helps and minimizes the frequency of those episodes. R. 62. Plaintiff reported using a TENS unit to help with tightness and pain in her shoulders. R. 67.

In a written decision dated April 17, 2017, the ALJ found Plaintiff was not disabled. R. 20–30. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed a complaint in the United States District Court for the Eastern District of Wisconsin seeking judicial review of the ALJ's decision. The matter was reversed and remanded for further proceedings based upon a stipulation of the parties. R. 737–38; *Schmidt v. Berryhill*, No. 18-cv-575 (E.D. Wis.).

ALJ Timothy Malloy held a second administrative hearing on December 10, 2019. Due to time limitations, the ALJ held a supplementary hearing on January 16, 2020. At the December 10, 2019 hearing, Plaintiff, who was represented by counsel, and Dr. Andrew Brown, a medical expert,

testified. R. 600–53. At the supplemental hearing, Plaintiff finished her testimony and a VE testified. R. 654–701.

At the time of the December 10, 2019 hearing, Plaintiff was 59 years old and lived with a brother and a sister. R. 635, 649. Plaintiff testified that she stopped working in April 2013 and that, prior to the alleged onset of disability, she had worked in the cash office of a retail store processing, counting, depositing, and ordering money for the store. R. 635–36. She testified that it was a job where you needed to be able to focus, "[y]ou couldn't have a brain fog day." R. 665. She stated that, in September 2012, her hours were reduced to about 20 hours a week, and then in April 2013, her position was eliminated. R. 636. Plaintiff testified that, each week, she would use approximately four to fourteen hours of paid time off to manage her issues. R. 647.

Plaintiff stated that she drives selectively, up to 50 percent of the time. R. 649. She testified that she tries to stretch most mornings before she gets up and that she is "probably, physically good for maybe four hours a day, six on a good . . . day." R. 650. She indicated that she sometimes does laundry and tries to get a little bit of exercise every day, such as using the stairs and walking. *Id.* Plaintiff testified that she goes to the library once or twice a week and stays for about an hour to use the computer to check email and "stay in contact with the world." R. 670. She described that some days she only has fatigue, other days she only has dizziness, and sometimes her fatigue exacerbates her dizziness. R. 673. She stated that, on a "really, really good day," or if absolutely forced to, she could walk a block but sometimes she gets out of breath "just going to the mailbox." R. 675–76.

In an eleven-page decision dated March 21, 2020, the ALJ concluded that Schmidt was not disabled. R. 580–90. Following the Social Security Administration's (SSA) five-step sequential evaluation process, the ALJ found that Plaintiff last met the insured status requirements of the

3

Social Security Act on December 31, 2018, and did not engage in substantial gainful activity from her alleged onset date of March 31, 2014, through her date last insured. R. 583. The ALJ determined that Plaintiff had the following severe impairments: ulcerative colitis, degenerative disc disease, irritable bowel syndrome, reflex sympathetic dystrophy (RSD), fibromyalgia, and osteoarthritis. *Id.* The ALJ found that, through her date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 585.

The ALJ then assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff could "perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a); however, she was unable to climb ladders, ropes, and scaffolds; she could no more than frequently climb ramps and stairs, stoop, crouch, kneel, and crawl; and she was limited to a 20-hour workweek." R. 586. Given these limitations, the ALJ found that Plaintiff was able to perform her past relevant work as a cashier I (sedentary, SVP 5, skilled) because such work did not require activities precluded by her RFC. R. 590. The ALJ noted that Plaintiff's part-time work could be considered past relevant work because Plaintiff performed the job within the past 15 years and was earning above substantial gainful activity levels for the entirety of her employment. The ALJ therefore concluded that Plaintiff was not under a disability, as defined by the Social Security Act, at any time from March 30, 2014, the alleged onset date, through December 31, 2018, the date last insured. *Id.* The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a

4

limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether

5

the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Plaintiff asserts that the ALJ's assessment of her symptoms rests on an erroneous evaluation of the record. The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments. *See* 20 C.F.R. § 404.1529. First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." § 404.1529(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of a claimant's symptoms and determines how they limit the claimant's "capacity of work." § 404.1529(c)(1). In doing so, the ALJ considers all the available evidence as well as the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) other treatment; and (6) any other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* § 404.1529(c)(3); *see also* SSR 16-3p. "ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014) (citation omitted). On judicial review, the court must "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). The

court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Lopez*, 336 F.3d at 539. "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted); *see also Burmester*, 920 F.3d at 510.

Plaintiff asserts that the ALJ applied an incorrect standard in assessing her symptoms. She challenges the following statement made in the ALJ's decision: "[A]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 586–87. Plaintiff contends that there is no requirement that a claimant's symptoms be "entirely consistent" with the objective and other evidence in the record. Although the ALJ used this "boilerplate language," the ALJ applied the correct standard in assessing Plaintiff's symptoms and, as explained below, discussed the substantial evidence that supported his decision. *See Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020); 20 C.F.R. § 404.1529(c).

In this case, the ALJ acknowledged that Plaintiff alleged disability chiefly due to fibromyalgia with related fatigue, pain, headaches, and dizziness and that she has additionally alleged disabling ulcerative colitis, degenerative disc disease, arthritis, and reflex sympathetic dystrophy. He noted that Plaintiff asserted that these impairments affect her ability to lift, squat, bend, stand, reach, walk, kneel, use her hands, climb stairs, see, and concentrate and that Plaintiff testified that she is unable to work because she needs to lie down for multiple hours each day due to fatigue and fibromyalgia pain, cannot use her left hand, has difficulty focusing and

8

concentrating, and has two to three bouts of ulcerative colitis per year. R. 586. He proceeded to discuss the evidence that supports her alleged symptoms, followed by a discussion of the evidence that contradicts, or is "not entirely consistent" with, her alleged symptoms. R. 586–87.

The ALJ concluded that the record fails to fully substantiate Plaintiff's allegations of disabling symptoms. With respect to Plaintiff's gastrointestinal conditions, the ALJ noted that Plaintiff has experienced left-sided abdominal pain and frequent episodes of loose stools with bloody mucus consistent with ulcerative colitis, which was confirmed by a 2008 colonoscopy. R. 587. He stated that, at the February 2017 hearing, Plaintiff reported having approximately two to three ulcerative colitis bouts per year. He observed that Plaintiff saw gastroenterologist Nicole Griglione, M.D., at an April 2017 consultation, after not seeing her regular provider, who had retired, in over a year. At the consultation, Plaintiff reported having one to two bowel movements daily with blood and mucus and requested a variety of tests to check for pancreatitis, SIBO, and pancreatic insufficiency. The ALJ noted that Dr. Griglione commented that Plaintiff had consistently refused treatment for her existing diagnosis of ulcerative colitis and was hesitant to order tests for conditions that she did not feel were indicated by Plaintiff's prior workup. The ALJ stated that, although Dr. Griglione counseled Plaintiff that the risk of developing cancer from untreated ulcerative colitis was greater than the risk of developing cancer from the treatment for the same, Plaintiff was disinterested in treatment, and by her July 2017 follow-up, her symptoms had waned and she was feeling better. *Id.* He commented that treating providers indicated Plaintiff has fairly good control of her ulcerative colitis despite her lack of trying recommended treatment, including antibiotics or autoimmune modifying agents, a follow-up colonoscopy, radiographic or endoscopic evaluation, bloodwork, a pelvic ultrasound, or a referral to gastrointestinal specialists. R. 588. The ALJ stated that he would expect Plaintiff to pursue available treatments if her

gastrointestinal disorders were truly disabling. The ALJ found, in any event, that Plaintiff exhibits normal bowel sounds; no distension, masses, hepatosplenomegaly, rigidity, rebound, guarding, CVA, or McBumey's point tenderness; and negative Murphy's sign during examinations. *Id.*

The ALJ observed that the record documents Plaintiff complaining of chronic widespread pain with related dizziness two to three times per week, several headaches per week, and blurry vision and severe fatigue. He noted that, during physical examinations, Plaintiff has evidenced reduced range of motion, tenderness, and muscle spasms in her spine, diminished (4- to 4/5) strengths in her lower extremities, an unsteady gait, impaired balance, mildly positive Romberg testing, difficulty with tandem walking, and eighteen positive tender points at times. The ALJ indicated that diagnostic imaging of Plaintiff's brain revealed scattered nonspecific cerebral white matter lesions, moderate for her age, and that diagnostic testing also revealed degenerative disc disease and kyphosis in her thoracic spine as well as degenerative changes in her right hand and left big toe. He explained that treating providers diagnosed her with fibromyalgia/chronic fatigue syndrome, sent her to physical therapy (which proved unsuccessful due to reported fatigue, pain, headaches, and dizziness), provided manual manipulation, and prescribed various medications and a TENS unit without reported relief. R. 587.

In any event, the ALJ noted that, although Plaintiff has fibromyalgia/chronic fatigue syndrome and has exhibited some reduced findings during examinations at times, she demonstrates normal objective findings at the vast majority of evaluations. In particular, the ALJ observed that Plaintiff consistently appears with full (5/5) strength and range of motion (outside of her spine), normal muscle tone and bulk, intact sensation and coordination, symmetrical reflexes, and the ability to complete transfers and walks with a normal gait. *Id.* The ALJ indicated that treatment providers told Plaintiff that, despite the presence of white matter on her brain imaging, it may not

10

Case 1:20-cv-00953-WCG   Filed 09/27/21   Page 10 of 17   Document 26

be clinically significant and that, despite Plaintiff's repeated assertions that she has Lyme's disease, testing for the condition proved unremarkable/negative. R. 587–88. He also remarked that diagnostic imaging of Plaintiff's spine, hands, and feet showed just mild findings and laboratory workup showed a negative ANA and no autoimmune disorders. R. 588.

Plaintiff asserts that the ALJ's decision demonstrates a pervasive misunderstanding of fibromyalgia because he improperly relied on the objective medical findings to assess her limitations. SSR 12-2p provides guidance on how to develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia and explains how such evidence must be evaluated. The ruling cautions that, "[a]s with any claim for disability benefits, before we find that a person with an MDI of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). It explains that ALJs must "consider a longitudinal record whenever possible" as well as "[w]idespread pain and other symptoms associated with [fibromyalgia], such as fatigue." *Id.* at *6. The ruling notes that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." *Id.* at *3.

In this case, the ALJ followed SSR 12-2p in evaluating the presence and severity of Plaintiff's fibromyalgia. He determined that Plaintiff's fibromyalgia was a severe impairment but that she is not as limited as she alleges. He appropriately based that determination on the longitudinal records of her ongoing medical evaluation; treatment for her fibromyalgia, chronic fatigue, and associated symptoms; Plaintiff's statements; and the other evidence in the record. R. 586–87.

Plaintiff further asserts that the ALJ did not adequately evaluate her mental symptoms related to her fibromyalgia under SSR 12-2p, including difficulty focusing and concentrating and "brain fog." The ALJ acknowledged that Plaintiff endorsed decreased energy, fatigue, diminished appetite, irritability, crying spells, reduced concentration, and feelings of hopelessness. R. 583. He explained that Plaintiff exhibited normal affect, behavior, judgment, thought content, speech, memory, fund of knowledge, abstract reasoning, judgment, insight, and concentration with no suicidal or homicidal ideation during treatment and consultative examination. He noted that the most recent medical evidence does not contain any subjective complaints regarding mental health, nor positive objective clinical findings. R. 583. The ALJ also found that Plaintiff had no more than mild limitation in the functional area of concentrating, persisting, and maintaining pace. He reasoned that, while Plaintiff endorsed having reduced concentration due to fatigue, during a consultative examination, she successfully completed serial seven subtractions, spelled the word "world" both forwards and backwards, and tracked the conversation. The ALJ further noted that Plaintiff admits to paying attention for up to an hour straight and finishing what she starts, she was able to work a skilled position for over thirty years, and she demonstrated no overt difficulties following along at the hearings. R. 584. Plaintiff asserts that the ALJ erred by considering her work history and not considering how her symptoms began to worsen after 2009. But the ALJ discussed the medical evidence concerning Plaintiff's condition after 2009.

The ALJ also cited the medical opinion evidence of Dr. John Warren and Dr. Anderson, who opined that Plaintiff does not have a severe mental health impairment singly or in combination. He explained that he gave both opinions great weight because they are highly trained mental health providers who are familiar with the rules and regulations of disability determinations, Dr. Warren was able to review most of the record, and Dr. Anderson reviewed the

12

entire record. He found that their assertions were congruent with Plaintiff seeking no mental health treatment for her conditions, refusing to consider medication, and having good objective examination findings, such as normal affect, behavior, judgment, thought content, speech, memory, fund of knowledge, abstract reasoning, judgment, insight, and concentration with no suicidal or homicidal ideation. *Id.*

In addition, the ALJ gave significant weight to the portion of consultative examiner Dr. Roland Manos' opinion that Plaintiff is able to understand and remember simple directions, handle routine work stress, and interact appropriately with supervisors and coworkers. R. 584–85. He reasoned that Dr. Manos is a highly trained mental health specialist who personally observed and examined Plaintiff and that this portion of his opinion is consistent with Plaintiff working a skilled job for over thirty years and having good objective examination findings. The ALJ gave little weight to the portion of Dr. Manos' opinion stating that Plaintiff cannot adapt to change in the work setting, finding it inconsistent with Plaintiff's lengthy work history (losing the job due to factors outside her mental health or medical conditions as the job was eliminated) and Plaintiff's own concession that she adapts to change "okay." R. 585. The ALJ also gave little weight to Dr. Manos' statement that Plaintiff may not be able to follow through with directions because of fatigue because it was based purely on Plaintiff's subjective statements and not consistent with the examination findings during treatment visits or during consultative evaluation. *Id.*

The ALJ gave little weight to the opinions of rheumatologist Dr. John Fahey. Dr. Fahey first saw Plaintiff in November 2018 and then not again until April 2019 and thereafter. He indicated that, effective October 16, 2019, Plaintiff would have been unable to work "an easy job 8 hours per day 5 days per week" due to severe fatigue and pain and opined that Plaintiff required shifting positions at will between sitting, standing, and walking; would require unscheduled

13

breaks; could use her right upper extremity 50% or less of the time and her left upper extremity 20% or less of the time for reaching laterally and overhead, gross manipulation, and fine manipulation; and would be absent from work about four days per month, and off-task 25% or more of the workday. He also opined that Plaintiff had "marked" limitations in her activities of daily living, social functioning, and ability to concentrate and maintain pace. R. 588. The ALJ noted that he found these limitations effective October 16, 2019, many months after Plaintiff's date last insured and that his objective examination findings do not support the significant restrictions he found. The ALJ explained that, after the initial visit in November 2018, Dr. Fahey found no abnormalities on physical examination other than diffuse trigger point muscle tenderness all over the body, and as of August 2019, the trigger point tenderness was characterized as "mild." The ALJ also reasoned that Dr. Fahey's opinions regarding the effect of fibromyalgia on Plaintiff's mental health is afforded little weight because he has no special training or expertise in the area of mental health. R. 589.

The ALJ also summarized the testimony and opinions of Dr. Andrew Brown, who testified at the administrative hearing. Dr. Brown opined that Plaintiff would be limited to performing sedentary work but, due to fatigue, she would likely be unable to complete a 40-hour workweek on an ongoing basis. R. 588–89. Dr. Brown further opined that a limitation of 20 hours of work per week would be reasonable, based on the objective record. The ALJ gave Dr. Brown's opinions great weight, explaining that Dr. Brown's findings are consistent with Plaintiff's work history; generally good objective findings at the vast majority of physical evaluations (full 5/5 strength and range of motion outside of her spine, normal muscle tone and bulk, intact sensation and coordination, symmetrical reflexes, the ability to complete transfers, and walking with a normal gait); no more than mild to moderate diagnostic imaging results; negative laboratory/blood work

14

findings; and refusal to try recommended treatment. R. 589. Plaintiff contests the ALJ's characterization of Dr. Brown's opinion as "based on the objective record" because Dr. Brown indicated that his opinion was based on his experience. Even though Dr. Brown testified that his opinion was "based on experience," he also repeatedly stated that his findings were based on the records. *See* R. 617–18 ("I believe based on the records, that would be reasonable.").

The ALJ also gave some weight to the opinions of the state agency medical consultants Drs. Syd Foster and James Greco, who asserted Plaintiff remains capable of performing less than the full range of light work, with additional postural limitations. The ALJ commented that these findings were several years old and the current record supported further limitation to sedentary work and no more than 20 hours per week. *Id.*

Plaintiff does not argue that the ALJ erred in evaluating the medical opinion evidence. Instead, she asserts that the "one-time evaluation" of a state agency consultative psychologist does not prove that she has no limitations concentrating, persisting, or maintaining pace in a work environment. She also maintains that the ALJ improperly considered her difficulty focusing and concentrating as symptoms of her depression and anxiety, not her fibromyalgia. But Plaintiff does not cite to any medical opinion that recommends additional restrictions than the ones the ALJ found. The ALJ thoroughly considered the evidence regarding Plaintiff's symptoms and supported his conclusions with substantial evidence. Therefore, remand is not warranted on this basis.

Plaintiff next argues that the ALJ erred by failing to list her chronic fatigue syndrome as a medically determinable impairment or severe impairment. The Court concludes that the failure to list chronic fatigue syndrome as a separate medically determinable impairment is harmless error. Plaintiff herself acknowledges that "there is considerable overlap of symptoms" between chronic fatigue syndrome and fibromyalgia. Pl.'s Br. at 27. The ALJ repeatedly referred to her chronic

fatigue syndrome in conjunction with her fibromyalgia and addressed her fatigue as a major symptom of her fibromyalgia. *See* R. 583–89. Significantly, in the RFC, the ALJ limited her to a 20-hour workweek to address her fatigue, as recommended by Dr. Brown and supported by the record. R. 589. Because the ALJ fully accounted for her fatigue, and Plaintiff advances no argument that a separate listing would have resulted in a finding of disability, the ALJ did not commit reversible error by failing to list it as a separate medically determinable impairment or severe impairment. *See Denton*, 596 F.3d at 423.

Plaintiff asserts that the ALJ's decision finding that Plaintiff has consistently refused recommended treatment for her fibromyalgia is not supported by substantial evidence. The ALJ observed that Plaintiff has consistently refused recommended treatment for her fibromyalgia and related symptoms. R. 588. He noted:

> She declined Toradol injection, migraine medications, or NSAIDs for her headaches, a low dose of benzodiazepine for her dizziness and anxiety, a spinal tap for further workup of a possible autoimmune disorder, and waited over a year to get the requested brain imaging. In addition, she has consistently refused treatment for ulcerative colitis, despite counsel against potential risks of letting it remain untreated.

*Id.* He commented, "Notably, the undersigned would expect the claimant to pursue all treatment options if the claimant's fibromyalgia and chronic fatigue syndrome were as disabling as she alleged." *Id.* It was not improper for the ALJ to note that Plaintiff failed to try every aspect of treatment for her symptoms, including those related to her fibromyalgia.

Plaintiff contends that the ALJ's assessment of her activities of daily living was not supported by substantial evidence. While an ALJ must consider the claimant's daily activities as one of the factors in evaluating intensity and persistence of pain, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ cannot place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the

16

home." *Mendez v. Barnhart*, 439 F.3d 360, 362–63 (7th Cir. 2006). Plaintiff asserts that her ability to be independent in her activities is not inconsistent with her allegations of disabling symptoms. In this case, the ALJ noted "the claimant's ability to tend to her personal care, prepare meals for herself, perform simple chores, shop and drive at times, go to the library regularly, pay attention for an hour, finish what she starts, and follow instructions all suggest better functioning than her allegations of disabling symptoms would indicate." R. 589. The ALJ properly relied on Plaintiff's admitted activities to assess her statements concerning the intensity, persistence, and limiting effects of her impairments.

The ALJ explained that the overall medical evidence, Plaintiff's activities of daily living, and Plaintiff's testimony contradicted Plaintiff's statements about her symptoms. The fact that reasonable factfinders may reach different conclusions is not a reason to overturn the ALJ's credibility determination. It is not the reviewing court's role to reweigh the evidence. *Lopez*, 336 F.3d at 539. The ALJ's conclusion is supported by substantial evidence in the record, is not patently wrong, and does not necessitate remand. *Elder*, 529 F.3d at 413–14.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated at Green Bay, Wisconsin this 27th day of September, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge